May it please the court, Catherine Tassinari, the attorney representing Peter Mooney. He's the claimant in this case, a Gulf War veteran who's receiving VA benefits. The primary issue in this case is the opinion of Dr. Turner, the treating VA psychologist, who, before he gave an opinion and did any testing, he had already worked with Mr. Mooney in over 20 group therapy sessions. And when he examined him, he based his opinion on two specific objective findings. One is he noted a number of clinical observations, including psychomotor agitation, occasional irrelevant, illogical or obscure patterns in his speech. He had poor insight, rapid speech, and he was labile. But he also based it on objective testing, the MMPI-2, which Dr. Turner referred to as the Rolls-Royce of psychological testing. And that was a valid test, and it showed extreme suspiciousness with extreme anxiety, psychological turmoil, and high scales in a number of critical areas. Now, when the ALJ rejected Dr. Turner's opinion, she didn't mention any of those things. The state agency psychologists did not mention anything except rapid speech. They didn't mention the MMPI. They didn't mention the clinical observations of psychomotor agitation. There's no conflicting evidence in terms of any other examining psychologist who found or made any findings to the contrary. What relief are you seeking? Pardon me? What are you asking for? What do you want us to do? I'd like you to credit Dr. Turner's opinion. Then what does that get you? Because the analysis here stopped, if I remember correctly, the analysis in this particular case stopped at Step 4. That's right. The ALJ didn't go to Step 5. Is that correct? That's right. So when you say you want us to order the ALJ to credit Dr. Turner's testimony, I guess in addition to other things that you intend. Hit. Where he erred, allegedly erred. But what is the relief you're asking for? Well, Dr. Turner said. Are you asking us to remand an award for payment of benefits? Are you asking us to remand for further proceedings? Are you asking us to send it back to the district court for something? What do you want? We'd like payment of benefits, Your Honor. Well, how could we do that? The reason you can do it is Dr. Turner said that this claimant is wholly intolerant of suspicion, and the VA testified that that would preclude employment. Excuse me. He is suspicious. He's wholly intolerant of criticism. When you say the VA, you're talking about the veterans? The V.E., the vocational expert at the hearing testified that that would preclude employment. Was that, was that, was the VA asked a specific hypothetical question? Was that included as part of it? Yes, Your Honor. On cross-examination. Where was that? The V.E. was asked to consider, that's at 731, 730, 731. Okay, hold on. All right. I got it. He was asked to consider a hypothetical person with the limitations that the ALJ had set out, but in addition, who would not respond appropriately to criticism by the supervisor. The V.E. testified that such a person was likely to be eventually terminated. Was that different than saying likely to be terminated? Is that, is that different than saying that he's unable to? Well, you know. How does that differ? Or why is that the same than saying that he's unable, that in his opinion, this fellow could not perform any gainful? Well. Or gainful work. Okay. Could have worded it better. But the agency has a ruling that talks directly on the issue of basic unskilled skills work, and one of the basic things is you have to be able to respond appropriately to supervision. It's just one of the basic requirements of unskilled work. How did the V.E. get in the picture since they never got to Step 5? Isn't the vocational expert usually brought in at Step 5? I think that probably the ALJ had not decided if this was a Step 5 case or not. You know, actually, most of the cases, by the time I handle them, they are Step 5 cases. Are you contending that they did reach Step 5 here? No. Well, the ALJ found he could do his past work as a parking lot attendant. Right. She did not find that he could do his, the work he was doing in compensated work therapy. The reason I ask the question is the same one that Judge Pias did, I believe, which is that when we consider relief, if you're correct, if the ALJ incorrectly disregarded Dr. Turner's testimony based upon the work and that special confined parking lot work that he did for the Veterans Administration under a special program and otherwise discounted the testimony inappropriately, the most we could do is to send it back for further proceedings and then just pick it up from there. But if Step 5 has been reached, then you wouldn't have to do that. Then one could order benefits.  But I'm trying to understand whether your contention is that Step 5 was reached and an evaluation was made. I guess I'd never thought of that. Just because the ALJ decided the case at Step 4, I never thought that that would preclude, if all the evidence fits in and we've done the development with the VE, that it would be necessary to. But you still have to have a showing that there's no job available in the national market in Step 5. You can't just award benefits if that hasn't been taken, can you? Right. Well, I guess the way I'm interpreting the VE's testimony is that no unskilled job could be performed. Okay. So you're saying that the VE's testimony was that under the circumstances no ‑‑ you basically answered the question. There is no job available in the national market that this person could fill. That's right, Your Honor. Okay. Counsel, can you help me? I know in past cases we have occasionally directed the entry of benefits as part of our disposition. But then the Supreme Court decided INS versus Ventura, which contains some pretty strong language that on petitions for review of administrative agency decisions, it really is our obligation to tell the agency where it has erred and then remand it for further proceedings consistent with our ruling. And it seems to me that you are asking first for a declaration that Dr. Turner's testimony should be fully credited and then a completion of the five‑step analysis in order to fully adjudicate the claim. So how can we award, direct the entry of benefits as you would like us to do in the face of that authority? I don't think I mentioned it in this case because it's not where I was heading. But there's the ‑‑ but the Ninth Circuit has kind of a three‑part, I'm thinking particularly of the Beneke case, but the court has gone through when it would be appropriate. And when those rare cases ‑‑ Those post-Ventura cases, I guess, is relative. I'm not sure when Ventura ‑‑ It's relative. I want to say 2005. I have to say I haven't looked at it recently, but it's within the last five years. Well, there have been so many cases where this court has reversed since Ventura. No question. We used to do it with reckless abandon, but the ‑‑ Well, don't stop now. The Supreme Court says stop, we have to stop. So if you're not familiar with Ventura, I guess ‑‑ I'm not that familiar with it, but it seems to me that this court, since Ventura, has found that when there's no point in going back, we have a person who's been, who applied so long ago. I know the district court is swamped. But I just ‑‑ I think that the court, this court has often found there's just no point in going on if ‑‑ Well, usually that happens where the ALJ has reached all five steps and along the way has failed to credit some testimony or made an error along the way. And if you correct it, there's nothing really left to do if the VA testified and the ALJ dealt with step five, and then you can say there's nothing, you know, if you credit a certain testimony, there's nothing left to do, then benefits would be appropriate. Well ‑‑ But here, see, the problem here is that, at least what I see, is that even though there may have been some testimony and some evidence at step five, on the record, the ALJ didn't really ‑‑ he stopped at step four. And the hypothetical to the VE is a little bit ambiguous. Okay. Thank you. I've run out of time. Thank you. Good morning, Your Honors. Matthew Pyle representing the Commissioner of Social Security. This is a case that involves a remote date last insured of September 30, 2004. And so in order for Mr. Mooney to establish that he was disabled, he had to establish that he was disabled no later than that date. And most of the evidence in the record pertaining to the relevant period in this case is VA records. And the relevant and most disputed evidence in the case is, of course, Dr. Turner's opinions, which Ms. Tesonari just mentioned. But the ALJ just basically disregarded what the VA had done over the years and certainly Dr. Turner's testimony. I've got to admit, Mr. Pyle, I hope you can help me understand why that's justified. Mr. Mooney worked in a CWT sheltered work program. And because he did that, the ALJ just basically discounted anything that Dr. Turner said because she said he could work. Your Honor, that's not a full work program, is it? No, it's not. And that's not the only work that the ALJ was relying on. There was also work in the late 1990s that was at a substantial gainful activity level when he was a parking lot attendant. Or like at two hours a day or three hours a day. Well, it was up to full time, and it was substantial gainful activity. And the ALJ's reasoning was broader than just pointing out that he was able to do 20 hours of vocational rehabilitation a week. It was that there was this underlying premise of these opinions that he hadn't done any work or any competitive work at all. Even if you assume that Dr. Turner was not as careful, maybe he wasn't even aware of this other activity, but it didn't change the fact that he felt that Mooney had anxiety and depression, had difficulty working in relationships. This other job didn't last very long at all. And certainly the work he did in the CWT sheltered program was for disabled vets who were not able to hold a competitive job. That's fully consistent with that. Yes, Your Honor, except that the point of the vocational rehabilitation is to get someone back ready for competitive employment. That's the hope. And the ALJ's analysis in this regard related to these GAF scores, which were all consistently in the 40s, and the point of the ALJ's analysis there was that someone with serious symptoms, such as a GAF in the 40s, would not typically be expected to be able to even hold down the 20-hour-a-week vocational rehabilitation work. But I understand your position about the GAF score, but the reality is that Dr. Turner and Dr. Caldron respectively put him in that range. That's true, Your Honor. Dr. Caldron also assessed that GAF score, even though he admitted that his anxiety was on a 4 on a scale of 1 to 10, where 10 was the worst anxiety, and where he reported that he was working 20 hours a week in vocational rehabilitation. And the ALJ's analysis was that those two things are inconsistent with a GAF that's so low as 40. But then she's playing doctor, or he's playing doctor in this thing. I mean, the reality is, doesn't the ALJ, if he disregards a primary treating physician, which Dr. Turner certainly qualified for at some point, doesn't he have to have some other scientific evidence that is the basis for disregarding that? It seems like the ALJ just kind of said, you know, that doesn't make any sense to me that these scores and what he diagnoses there, so I'm just going to disregard it. Well, it's the VA's, or excuse me, it's the ALJ's obligation to weigh the evidence. And that's exactly what happened here. The opinions from Dr. Turner, the GAF scores from the other VA sources didn't seem to be in line, I think was what the ALJ said. You can't weigh a treating physician's diagnosis with a GAF score. There's nothing in our case law that permits that. It requires other medical evidence that is used to directly refute the treating physician's opinion, and then the ALJ has to indicate the reason for that. Am I missing something? Is there another treating physician or other physician that looked at Mr. Mooney that the ALJ relied upon to discredit Dr. Turner's testimony? Well, it's not always required to have another treating physician to rely on if you reject another treating physician. What the ALJ did here was looked at the whole record as a whole and decided that what Dr. Turner and some of the other VA sources were doing was inconsistent with observations of Mr. Mooney throughout this relevant period of time, such as cooperating with the staff and getting along with his peers. Within that treated program. That's a whole different deal, counsel. But it's within the treated environment that they were able to express their opinions, and if he was exhibiting one thing in treatment and they gave opinions that were inconsistent with what they were observing in treatment, then I think that is a clear and convincing reason to reject a treating physician's opinion. Maybe I would readily confess that you have an expertise in the law in this area that I perhaps don't have, but from what I have read of the case law in this particular matter, I honestly don't see how the ALJ got where he did on this issue. I really don't. It doesn't make any sense to me at all. What I would point to, then, Your Honor, is the Bayless case, which does talk about when a doctor's opinions are inconsistent with that doctor's other observations and notes regarding the claimant. And, yes, that failure to list the outside parking work that was done outside the CWT program? Well, they are allowed to look at it. You can also discredit a treating physician if there's inconsistency with daily activities, and I think what the ALJ did here was, without using the words daily activities, looked at the whole record and said, these scores, these opinions are inconsistent with what this claimant was demonstrating in his daily activities, because he wasn't just working in vocational rehabilitation. He wasn't doing a lot of this other work, but he was also working outside of vocational rehabilitation doing crowd control work, which itself is inconsistent with the significant social limitations that some of these doctors were assessing. And even though it wasn't substantial gainful activity, and I'm not saying it was, it is an indicator of what this person's, Mr. Mooney's, functioning was, and that is another indicator of inconsistency with what the doctors were saying. So the state of our law does not require that in order to find or discredit a doctor, or in this case a health care provider's treatment notes, you must find another health care provider who found something different. The ALJ is permitted to consider all of the evidence of the claimant's activities, including daily work activities. Absolutely, Your Honor. Absolutely. And here this is not a situation where the record wasn't developed in those other ways. There were consultative examinations ordered. There was a physical and a psychological consultative examination. There were state agency doctors that assessed, non-examining doctors admittedly, but there were other doctors that looked at these records. And I should point out that Dr. Turner's opinions weren't fully disregarded. The RFC, the residual functional capacity here, specifically said that he was capable of superficial contact with others, and that is consistent with what Dr. Turner said that this claimant was capable of doing. If you could for a moment just assume that, I don't know how this is going to come out, I want to complete the analysis. So let's just assume for a moment that we were to disagree with you and conclude that the ALJ's decision to discredit Dr. Turner was not supported by substantial evidence. What do we then do with this case? I think it does still have to go back for further proceedings, Your Honor, and there's a couple reasons I think that's true. One is, Your Honor has pointed out earlier, it is a step four decision, and the ALJ has not completed the step five determination. There was some testimony that could arguably be read as implicating step five, but that wasn't really developed, and it wasn't fully explored at the hearing. And I think we also have what Your Honor's mentioned was this INS versus Ventura case, and although I also have to confess I'm not sure when that case happened in relation to other Ninth Circuit cases that did remand for payment, the agency does rely on that case to point out that the preferred remedy is to send back for further factual development. And I also have to point out that the GAF scores are not clear. In this regard, I think the ALJ was exactly right. We do not know from those GAF scores exactly what functional limitations there are associated with those GAF scores. Even though it says serious symptoms, when you look up the definition of a GAF score that's in the 40s, we do not know actually what kind of physical or functional limitations those GAF scores might represent. Let me ask you, one other thing that I kind of found, I still don't quite understand how Social Security treats this, and that is, you know, here the VA rated him 100% disabled. Exactly. But that doesn't seem to carry much weight with Social Security. It can, Your Honor. And I understand that Your Honors typically see cases once they've been denied, but an awful lot of cases are approved. And the Valentine case recently from last year explains the factors that an ALJ may consider in deciding not to give great weight to a VA disability rating. And I think those were present here. The Commissioner's position is that Dr. Turner's opinions were properly rejected, and that is a reason to reject the VA rating as a whole, too, because that VA rating was based on Dr. Turner's opinions. And the other consideration under Valentine is whether there is other evidence available to the Social Security Administration that was not available to the VA, and that's present here as well with the same evidence that I mentioned earlier regarding consultative examinations, the State agency doctors, vocational testimony, and earnings records that were not available to the VE. Okay. Thank you, Your Honors. We would ask that. Thank you very much. I'll give you a minute for rebuttal. Just to say that the other evidence that the agency says the ALJ had available to her really does not conflict with Dr. Turner, that Dr. McConaughey's opinion, that's the consultative examination he's referring to, does not conflict. The State agency doctors did not address the MMPI, did not address most of Dr. Turner's clinical observations. So it can't be said that they conflict with Dr. Turner since they never examined the claimant. Thank you. Thank you. Thank you for your arguments, counsel. The matter is submitted.
judges: Paez, Tallman, Smith M.